UNITED STATES of America,
Appellee,

v.

Dallas Ray DELAY, Appellant.

No. 74–1127.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1974.

Decided July 30, 1974.

John Gianoulakis, Kohn, Shands, El-
bert, Gianoulakis & Giljum, St. Louis,
Mo., for appellant.

Richard E. Coughlin, Asst. U. S.
Atty., St. Louis, Mo., for appellee.

Before LAY, HEANEY and ROSS,
Circuit Judges.

ROSS, Circuit Judge.

This is an appeal from a jury verdict
finding Dallas Ray Delay guilty of one
count of bank robbery in violation of 18
U.S.C. § 2113(a) and three counts of
killing a person in an attempt to avoid
apprehension for the offense of bank
robbery in violation of 18 U.S.C. §
2113(e). On appeal, Delay designates

**1362**

various assignments of error. We affirm the judgment of conviction, but vacate the sentences under Counts I, II and III of the indictment.

The evidence indicates that Delay abducted the president of the Bank of Grandin, Missouri, Mr. Bob Reid Kitterman, and his wife and daughter. Holding Mrs. Kitterman and the daughter as hostages, Delay strapped an explosive device to the back of Mr. Kitterman and directed him to go to the bank, withdraw funds, and return to the abduction site. While withdrawing the funds from the bank safe deposit box, Kitterman made certain declarations to bank employees indicating the nature of the coerced withdrawals, the presence of the electronic device on his person, and the fact of the detention of his wife and daughter. After placing $10,850 into a bank bag, Kitterman returned to the wooded area where his wife and daughter were being detained by Delay. The bodies of the three Kittermans were found approximately one and one-half hours later tied to trees in a wooded area outside of town. Each had been shot in the head.

*Double Jeopardy*

■ Delay first asserts that by this federal prosecution, he has twice been put in jeopardy for the same offense in violation of his fifth amendment rights. Delay had previously pleaded guilty to three counts of first degree murder in Missouri state court in violation of V.A.M.S. 559.010. He received therefor three consecutive life sentences under V.A.M.S. 559.030.

That state conviction, however, does not bar a subsequent federal prosecution. United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922) held that where two sovereignties had prohibited the same acts within their constitutional authority and each was punishing a breach of its prohibition, a subsequent federal prosecution did not violate the fifth amendment:

We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.

It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.

*Id.* at 382, 43 S.Ct. at 142. *Lanza* is still good law today. Indeed, in Abbate v. United States, 359 U.S. 187, 195, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), the Supreme Court specifically declined to overrule *Lanza.* The justification for the continued force and vitality of *Lanza* was expressed:

[I]f the States are free to prosecute criminal acts violating their laws, and the resultant state prosecutions bar federal prosecutions based on the same acts, federal law enforcement must necessarily be hindered. . . . But no one would suggest that, in order to maintain the effectiveness of federal law enforcement, it is desirable completely to displace state power to prosecute crimes based on acts which might also violate federal law. This would bring about a marked change in the distribution of powers to administer criminal justice, for the States under our federal system have the principal responsibility for defining and prosecuting crimes.

*Id.* at 195, 79 S.Ct. at 671. Accordingly, Delay's prior Missouri conviction did not bar the instant prosecution.

*Proof of Intent*

■■ Delay's next assignment of error concerns the government's alleged failure to prove the specific intent necessary for the commission of an offense under 18 U.S.C. § 2113(e). Delay argues that the only evidence of his in-

tent to kill to avoid apprehension was an extrajudicial admission made prior to the trial in federal court but subsequent to his conviction in state court. Unless corroborated by independent evidence, he maintains, that evidence is insufficient to prove intent. As authority for that position, he relies on Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L. Ed. 101 (1954) and Gay v. United States, 408 F.2d 923 (8th Cir.), cert. denied, 396 U.S. 823, 90 S.Ct. 65, 24 L.Ed. 2d 74 (1969). Delay's argument, however, is deficient.

The corroboration requirement in federal court is explicated in Wong Sun v. United States, 371 U.S. 471, 489–490 n. 15, 83 S.Ct. 407, 418, 9 L.Ed.2d 441 (1963):

> Where the crime involves physical damage to person or property, the prosecution must generally show that the injury for which the accused confesses responsibility did in fact occur, and that some person was criminally culpable. A notable example is the principle that an admission of homicide must be corroborated by tangible evidence of the death of the supposed victim. See 7 Wigmore, Evidence (3d ed. 1940), § 2072, n. 5. There need in such a case be no link, outside the confession, between the injury and the accused who admits having inflicted it. But where the crime involves no tangible *corpus delicti*, we have said that "the corroborative evidence must *implicate the accused in order to show that a crime has been committed.*" [Smith v. United States] 348 U.S. [147], at 154 [75 S.Ct. 194, 99 L.Ed. 192]. Finally, we have said that one uncorroborated admission by the accused does not, standing alone, corroborate an unverified confession. United States v. Calderon, 348 U.S. 160, 165 [75 S.Ct. 186, 99 L.Ed. 202].

Proof of injury and criminality, then, are sufficient corroborative elements for crimes which have tangible corpus delicti. Wong Sun v. United States, *supra*, 371 U.S. at 489 n. 15, 83 S.Ct. 407. Ac-

cord, United States v. Stabler, 490 F.2d 345 (8th Cir. 1974). Only where there is no tangible evidence of the crime is it necessary to personalize the corroboration and "implicate the accused." Wong Sun v. United States, *supra*, 371 U.S. at 489 n. 15, 83 S.Ct. 407.

In Gay v. United States, *supra*, upon which Delay relies, the essential element of intent to defraud depended entirely on an extrajudicial admission of the defendant. However, since fraud is criminal only because of a state of mind, it involves no tangible corpus delicti. Under *Wong Sun* it was therefore necessary that the corroborative evidence implicate the accused. This could have been accomplished only by demonstrating Gay's state of mind through independent evidence. Gay v. United States, *supra*, 408 F.2d at 930. However, *Gay* is inapposite to the crime here. Here there is a tangible corpus delicti, and the proof of the dead bodies with gunshots in their temples sufficiently established the injury specified in the crime and evidence of somebody's criminality. In other words, Delay's extrajudicial admissions were sufficiently corroborated without any independent proof of his state of mind.

■ However, even assuming independent proof of intent was necessary to corroborate the confession of homicide, which it is not, such proof is present on the facts of this case. Intent is provable by indirect or circumstantial evidence. United States v. Lawson, 483 F. 2d 535, 537 (8th Cir. 1973), cert. denied, 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974); Gay v. United States, *supra*, 408 F.2d at 929 (and cases cited therein). Here Delay announced his plan to perpetrate the bank robbery. He mentioned to at least one of his associates the names of one of the victims. He discussed the electronic explosive device. He purchased a pistol, later determined to be the murder weapon. The bodies were discovered within a few hours of the actual withdrawal of the funds. And the execution style of the

shootings indicated deliberate acts. These factors are sufficient corroborative circumstantial evidence of specific intent to commit murder in an attempt to avoid apprehension for the crime. They negate an argument that the killings may have been in self-defense or that they were committed in haste or anger.

The confession, thus corroborated and if otherwise admissible, may permissibly have been cumulated with other evidence of intent discussed above. The whole of that evidence was sufficient for the jury to find intent. Thus, it was not error for the court to overrule Delay's motion for acquittal on this ground.

*Admissibility of Confession*

■■ Delay next asserts that the extrajudicial admissions were themselves improperly admitted. These statements were made on three different occasions to a newspaper man, Royce, who was a part-time, unpaid, deputy sheriff, a former St. Louis policeman, and foreman of the coroner's jury. Delay argues that Royce must be considered a law enforcement officer to which the dictates of *Miranda* are applicable. Royce's noncompliance with the dictates of *Miranda*, he maintains, renders those statements inadmissible.

However, a close examination of the record vitiates this argument. At a suppression hearing prior to trial, Royce and the sheriff explained the nature of Royce's duties as a deputy sheriff. Royce was approximately one of thirty unpaid volunteers in a sparsely populated rural county. He became a deputy sheriff when the instant case arose because at that time a press secretary was needed. The only time he ever worked as a deputy sheriff was when he occasionally took pictures or searched the rivers for drowned bodies. Royce's sole interest in interviewing Delay was as a newspaperman attempting to get a story. At their first meeting in the courthouse there was no discussion about the crime. Rather Royce attempted to develop a rapport with Delay. Before

their second meeting, also at the courthouse, Delay was surrounded by a crowd of newsmen. The sheriff asked Delay with whom he would like to talk, and Delay responded, "Royce." The sheriff made available a small room for their conversation which lasted five or ten minutes. Royce was dissatisfied with the interview and broke it off. No promises were made nor was any coercion exercised. Due to his dissatisfaction with the interview, Royce undertook to arrange another meeting after Delay had been incarcerated in the state penitentiary and was serving the sentence imposed by state court. During the last interview, Delay disclosed that he and a confederate had determined to kill Kitterman as a part of the original plan. Throughout the interview, Delay was calm. He refused to answer only three questions which were not thereafter pursued by Royce. Also, during the last interview, Royce was accompanied by Sheriff Dawes who knew prison personnel and who thought he could help Royce obtain admittance to the penitentiary to conduct the interview. The sheriff offered to leave during the interview. However, Delay expressly told the sheriff that he could stay if he so desired.

The applicable rule is that:

[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. (Emphasis supplied.)

Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). After a review of the record we cannot say that Royce was acting as a law enforcement officer nor that Delay perceived him as such. Moreover,

we note that Delay was given his *Miranda* rights when first subjected to police interrogation under the state arrest and subsequently on several occasions when interrogated, while incarcerated, by federal law enforcement officers. *Miranda* deals with

> [t]he protection which must be given to the privilege against self-incrimination when the individual *is first subjected to police interrogation* while in custody at the station or otherwise deprived of his freedom of action in any significant way. (Emphasis supplied.)

*Miranda, supra,* 384 U.S. at 477, 86 S.Ct. at 1629. A confession is not necessarily invalid because the *Miranda* warning is not repeated in full each time the interrogation process is resumed after an interruption. Miller v. United States, 396 F.2d 492, 496 (8th Cir. 1968), cert. denied, 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed. 2d 574 (1969). In each case, the ultimate question is: did the defendant with a full knowledge of his legal rights, knowingly and intentionally relinquish them? After a review of the record, we believe that there was sufficient evidence to satisfy the trial judge by a preponderance of the evidence that the confession was voluntarily rendered. Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

### Change of Venue

Delay also alleges that the trial court abused its discretion in refusing to grant a change of venue because of pretrial publicity. He maintains that the pretrial publicity here was such as to prejudice his presumption of innocence before the jury.

■■ However, "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved." Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). Just because

> [t]here has been widespread or even adverse publicity is not in itself grounds to grant a change of venue.

. . . [A]n important case draws public attention through "swift, widespread and diverse methods of communication" and hardly any prospective juror "will not have formed some impression or opinion as to the merits of the case." The proper test is whether the prospective juror "can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

United States v. McNally, 485 F.2d 398, 403 (8th Cir. 1973) (citations omitted). Thus, only where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, should the judge continue the case until the threat abates, or transfer it to another county not so permeated with publicity. Sheppard v. Maxwell, 384 U.S. 333, 363, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Each case of course must be decided on the facts, and ordinarily the defendant has the burden of showing any essential unfairness in the adjudicatory process unless the totality of the circumstances raises the probability of prejudice. Sheppard v. Maxwell, *supra,* 384 U.S. at 352, 86 S.Ct. 1507; Estes v. Texas, 381 U.S. 532, 542, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); United States v. McNally, *supra,* 485 F.2d at 402. An examination of the voir dire of the veniremen discloses that an impartial jury was selected. The failure to grant the motion for a change of venue was not an abuse of discretion by the trial court.

### Peremptory Challenge

■ Delay assigns error in the exclusion by the prosecutor of all blacks from the jury. Although white, Delay has the right to challenge such exclusions. Peters v. Kiff, 407 U.S. 493, 500, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). However, a single instance of exclusion of all blacks from a jury is not grounds for reversal. Swain v. Alabama, 380 U. S. 202, 222, 85 S.Ct. 824, 837, 13 L.Ed.2d 759 (1965).

> The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a

fair and impartial jury to try the case before the court.

*Id.*

In United States v. Pollard, 483 F.2d 929, 930 (8th Cir. 1973), cert. denied, 414 U.S. 1137, 94 S.Ct. 882, 38 L. Ed.2d 762 (1974), we said:

[t]he presumption protecting the prosecutor may be overcome, and a prima facie case of discrimination established, by proof of a prosecutor's systematic exclusion of blacks from petit juries over an extended period of time.

Delay argues that the government should bear the burden of disproving systematic exclusion. Not only is there no authority for that position, but there is direct authority to the contrary in our circuit. Little v. United States, 490 F. 2d 686, 687–688 (8th Cir. 1974); United States v. Pollard, *supra*, 483 F.2d at 930. No such proof has been proffered in the present case.

*Voir Dire*

The sixth amendment guarantees to the accused the right to a trial by an impartial jury. In implementing this constitutional assurance during the voir dire of the jurors, a judge must afford a fair determination that no prejudice has been fostered. *Cf.* Aldridge v. United States, 283 U.S. 308, 315, 51 S. Ct. 470, 75 L.Ed. 1054 (1931). He must determine whether the nature and strength of the opinion formed (if any) are such as in law necessarily raise a presumption of partiality. Reynolds v. United States, 98 U.S. 145, 156, 25 L.Ed. 244 (1878). Toward this end, he is vested with wide discretion. Aldridge v. United States, *supra*, 283 U.S. at 310, 51 S.Ct. 470. Fed.R.Crim.P. 24(a). Yet when probing an area of prejudice, the court is not required "to put the question in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." Ham v. South Carolina, 409 U.S. 524, 527, 93 S.Ct. 848, 850, 35 L.Ed.2d 46 (1973). Similarly, if the court permits counsel to conduct the voir dire, he need not permit unlimited inquiry into a specific area of prejudice.

The trial court conducted a short preliminary examination of the veniremen. Thereafter, defense counsel, in an excellent and thorough examination, probed other areas of prejudice. The court curtailed questions only three times. Each of those questions related to questions of law and were properly within the scope of a court's instructions rather than voir dire. No abuse of discretion existed in the court's limitation of the voir dire.

*Admission of Photographs*

During the course of the government's case, photographs depicting the bodies of the three victims were admitted into evidence. Delay argues that those photographs served to aggravate the possibility of prejudice in the minds of the jurors. The admission of photographs is a matter within the sound discretion of the trial court. United States v. Leach, 429 F.2d 956, 962 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S. Ct. 1675, 29 L.Ed.2d 151 (1971). These photographs had probative value in that they were material to establishing the corpus delicti. Moreover the danger of possible prejudice was minimal. The photographs were distance shots, not inflammatory, and thus could not properly be said to stir up passion or unduly excite prejudice and so lead the jury to act upon outrage instead of competent proof. No abuse of discretion existed in the admission of the photos into evidence.

*Instructions*

Delay assigns error in the court's refusal of his proposed instruction:

\*        \*        \*        \*        \*        \*

You are further instructed by the Court that the government must prove defendant's purpose of avoiding or attempting to avoid apprehension for the commission of the offense charged

in Count I by evidence other than defendant's own statements made after the commission of the crime with which he has been charged.

For the reasons outlined in a previous section of this opinion, the instruction is a misstatement of the law. Delay was therefore not entitled to the instruction.

*Closing Argument*

■■■ During the closing arguments, the court sustained a government objection to defense counsel's attempt to mention the state murder prosecution and the fact that Delay was already serving three consecutive life sentences. Throughout the trial the court and counsel had taken precautions not to mention the state guilty pleas lest those confessions of guilt influence the jury's assessment of guilt in the federal prosecution. The court's ruling on the objection was not error.

■■■ Also during closing argument the court overruled an objection to the government's discussion which urged conviction on the basis that such a criminal should not be turned loose on society. The trial court has broad discretion in controlling closing arguments. United States v. Pruitt, 487 F.2d 1241, 1246 (8th Cir. 1973); Bryant v. United States, 462 F.2d 433, 436 (8th Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972); United States v. Turchick, 451 F.2d 333, 339 (8th Cir. 1971). Absent an abuse of discretion the court's ruling will not be overturned. Here, although it was proper to avoid mentioning the fact of the state confinement in the penitentiary, it was improper for the government to impliedly misrepresent the fact of the defendant's freedom. The government may permissibly argue for conviction based upon the facts presented to the jury. Yet it may not misrepresent the truth of collateral matters. It must confine itself to the evidence subject to the jury's deliberations.

However, although such an argument was improper, it is not of the magnitude to comprise prejudicial error. Based upon "our own reading of the record and on what seems to us to have been the probable impact [of the statement] on the minds of an average jury" we find the prosecutor's argument was harmless error. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under Fed.R.Crim.P. 52(a) it "shall be disregarded."

*Sentencing Errors*

Finally Delay assigns errors in his sentencing and the excessiveness thereof, which, on the § 2113(a) count, committed him to 20 years imprisonment and which, on each of the three counts under § 2113(e), committed him to consecutive 100 year terms of imprisonment.

■■■ The argument pertaining to sentencing error has two facets. First is the question of whether a violation of § 2113(a) (bank robbery) is, under applicable case law, merged into the greater crime of murder committed in attempting to avoid apprehension for the offense of bank robbery, in violation of § 2113(e). Without determining whether the offenses are technically "merged," we conclude under the rules of Jones v. United States, 396 F.2d 66 (8th Cir. 1968), cert. denied, 393 U.S. 1057, 89 S. Ct. 695, 21 L.Ed.2d 697 (1969), "that 18 U.S.C.A. § 2113 prohibits the imposition of more than one sentence for the violation of its several provisions." *Id.* at 69. *See also* Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961); Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); Prince v. United States, 352 U. S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); Sawyer v. United States, 312 F.2d 24 (8th Cir. 1963); Hewitt v. United States, 110 F.2d 1 (8th Cir.), cert. denied, 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409 (1940). *But see* Clark v. United States, 281 F.2d 230 (10th Cir. 1960). The sentence under § 2113(a) therefore shall be vacated.

█ The second part of this argument relates to whether or not Delay was properly convicted and sentenced for each of the three murders under three separate counts of the indictment, each of which alleged a separate violation of 18 U.S.C. § 2113(e). We conclude that the rationale prohibiting the pyramiding of violations of the various sections of § 2113 also prohibits the pyramiding of offenses on the basis of separate victims of the crime. The crime which Congress has defined and for which it has provided punishment is that of bank robbery and the various sections of the statute merely define different degrees of that same crime. The Court of Appeals for the District of Columbia has dealt with this same problem in connection with an indictment charging the defendant in four counts with robbery of four different tellers of the same bank during the same robbery. In that case the court stated as follows:

> Although there seem to be no cases precisely on point, we cannot agree with the Government's position that the robbery of each teller constitutes a separate "taking" within the meaning of the statute. While it may be true that under general theft and robbery statutes, a defendant may be punished under separate counts for taking money from different people in the same transaction, the statute here is not for theft or robbery against the person generally. The crime is *bank* robbery, and the statute is entitled "Bank Robbery and Incidental Crimes." There is no doubt here that only one transaction took place and that only one bank was robbed. Compare United States v. Hopkins, *supra* [150 U.S.App.D.C. 307, 464 F.2d 816], at 823. Even assuming that the intent of the statute in this regard is not perfectly clear, the Supreme Court has held that, unless a statutory intent to permit multiple punishments is stated "clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses". Bell v. United States, 349 U.S. 81, 84,

75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). *See also* Heflin v. United States, 358 U.S. 415, 419–420, 79 S.Ct. 451, 3 L. Ed.2d 407 (1959); Ladner v. United States, 358 U.S. 169, 177–178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); United States v. Universal C.I.T. Corp., *supra*.

United States v. Canty, 152 U.S.App.D. C. 103, 469 F.2d 114, 126–127 (1972). *See also* United States v. Faleafine, 492 F.2d 18, 20 (9th Cir. 1974); United States v. Hopkins, 150 U.S.App.D.C. 307, 464 F.2d 816, 823 (1972); Dimenza v. Johnston, 131 F.2d 47, 48 (9th Cir. 1942).

The sentences under Counts II and III of the indictment must therefore be vacated while the sentence under Count IV will be permitted to stand.

█ Finally, Delay argues that his sentence violates the eighth amendment proscription against cruel and unusual punishment. The federal courts have uniformly agreed that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review." United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). This circuit has generally adhered to the principle that a sentence within such statutory limits would not be disturbed if the district court has exercised discretion in imposing the sentence. United States v. Smallwood, 443 F.2d 535, 543 (8th Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93 (1971). *But see* Woosley v. United States, 478 F.2d 139, 143 (8th Cir. 1973). We do not find a sentence of 100 years imprisonment to be excessive for such a heinous crime involving a bank robbery and murder.

*See* Jones v. United States, *supra*, 396 F.2d at 69; United States v. Jakalski, 267 F.2d 609, 612 (7th Cir. 1959), cert. denied, 362 U.S. 936, 80 S.Ct. 759, 4 L.Ed.2d 751 (1960).

For the reasons hereinbefore expressed, the judgment of conviction is affirmed. The sentences on Counts I, II and III are hereby vacated.