**UNITED STATES of America, Appellee,**

v.

**Rufus CLOUDMAN, Jr., Appellant.**

**No. 75–1893.**

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1976.

Decided April 26, 1976.

Before VOGEL and VAN OOSTER-HOUT, Senior Circuit Judges, and BRIGHT, Circuit Judge.

VOGEL, Senior Circuit Judge.

Rufus Cloudman, Jr., appellant herein, appeals from a judgment of conviction of second-degree murder based upon a jury verdict received in the United States District Court for the District of South Dakota. His main contentions are as follows:

I. That the trial court erred in admitting into evidence Government's Exhibits Nos. 2, 3 and 5 and in refusing to admit into evidence Defendant's Exhibit A.

II. That the court erred in denying defendant's motions for dismissal at the close of the government's case on the grounds of self-defense and for directed verdict of acquittal at the close of all the evidence.

III. That because of insufficiency of the evidence the court erred in submitting the cause to the jury.

On April 25, 1975, an indictment was filed charging Rufus Cloudman, Jr., with second-degree murder, a violation of 18 U.S.C. § 1153 and § 1111. Upon arraignment and a plea of not guilty, trial was commenced before a jury on October 6, 1975. A jury verdict of guilty as charged was returned on October 7, 1975. Subsequently, the defendant was sentenced to the custody of the Attorney General under the provisions of 18 U.S.C. § 5010(b).

No question of jurisdiction appears. It was agreed that the incident out of which the charge arose occurred on the 19th of April, 1975, in the District of South Dakota in Indian Territory, to-wit: within the Rosebud Indian Reservation, a reservation under the jurisdiction of the United States; that Rufus Cloudman, Jr., is an Indian as was the alleged victim, Harvey Walking Eagle. The shooting of Harvey Walking Eagle appears clearly to have been the aftermath of a long drinking party at the home of the defendant-appellant.

Taking the alleged errors in order, we first discuss Exhibits 2 and 3. They consisted of bullet fragments recovered

Ramon A. Roubideaux, Rapid City, S. D., for appellant.

Donald R. Gienapp, Asst. U. S. Atty., William F. Clayton, U. S. Atty., Sioux Falls, S. D., for appellee.

from the body of the deceased, Harvey Walking Eagle. Both exhibits were identified by the pathologist who conducted the autopsy as having been removed from the body of the deceased. The relevancy of the two exhibits can hardly be questioned. The foundation laid by the government for their admission was amply sufficient. Moreover, defendant-appellant made no objection to the adequacy of the foundation at trial. See Fed.R.E. 103(a)(1). There was no error in receiving Exhibits 2 and 3.

■ Exhibit 5 was a photograph of the deceased admitted into evidence and exhibited to the trial jury. It was a black and white photograph taken very shortly after the commission of the alleged crime, shows the fully-clothed body of the deceased prior to the autopsy and in our opinion, and we have examined the photograph, could not be considered inflammatory or improper in any respect. Additionally, the admission of such a photograph comes clearly within the discretion resting soundly on the trial judge. *Giblin v. United States,* 523 F.2d 42, 44–45 (8th Cir. 1975); *United States v. Hoog,* 504 F.2d 45, 50 (8th Cir. 1974), *cert. denied,* 420 U.S. 961, 95 S.Ct. 1349, 43 L.Ed.2d 437 (1975); *United States v. Delay,* 500 F.2d 1360, 1366 (8th Cir. 1974); *United States v. Burton,* 485 F.2d 715, 717–718 (8th Cir. 1973); *United States v. Leach,* 429 F.2d 956, 962 (8th Cir. 1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); 4 Wigmore, Evidence, § 1157, at 340 (Chadbourn rev. 1972). No abuse of discretion has been shown.

■ It is next claimed that the trial court erred in refusing to admit into evidence Defendant's Exhibit A. Exhibit A was an FBI report of an interview by Agent Flynn with Charla Calzado, a government witness. Prior to the testimony of witness Calzado, defense counsel was furnished a copy of Agent Flynn's report. It was not a signed statement nor was it adopted by the witness, but was merely a reduction to writing by an FBI agent of an oral interview. As such it was hearsay and the District Court properly excluded it. Defense counsel used the report in cross-ex-

amination of the witness and then offered the report itself into evidence. The FBI agent who made the writing or report was present and available for calling, yet counsel chose not to call him. This would have been the proper procedure for impeachment. The exclusion of Exhibit A as hearsay was entirely correct. We find no error therein.

■ Item II presents the most serious charge of error. A reading of the entire transcript, and we have examined it *in toto,* indicates that there was "bad blood" or animosity between the Cloudmans and the Walking Eagles. During the four years preceding the tragedy herein, there had been fighting between the Cloudmans and the Walking Eagles. Four incidents were testified to, in most of which, if not in all, the Walking Eagles seemed to be in the aggressive. The fifth incident was the one in which Harvey Walking Eagle was killed. At the time the appellant had been giving a party in his home. There was a great deal of drinking and fighting. During the fighting Freddy Walking Eagle left the Cloudman residence and ran a short distance to his house, apparently to obtain assistance. Shortly thereafter Freddy Walking Eagle returned to the Cloudman residence with his brother Glenford and his father, Harvey Walking Eagle. According to most substantial testimony, these three were unarmed. After arriving at the defendant's residence, Glenford and Freddy Walking Eagle chased Sylvan and Ambrose White Hat who were engaged in chasing Daniel White Hat away from the Cloudman residence. The defendant-appellant then came out of his house, went to his car, got a gun, loaded it from ammunition in the trunk, and started shooting toward Glenford Walking Eagle, who was running away from him. At this time Charla Calzado and the victim, Harvey Walking Eagle, approached the defendant. Harvey Walking Eagle was still unarmed. The defendant-appellant then turned his rifle fire on Charla and Harvey. Prior to the time shots were being fired at Harvey, he made two statements which were, "If you're going to

shoot my sons I want you to shoot me first," and "You people should not be fighting as you are all related." The defendant subsequently shot and hit Harvey three times. Eight cartridges in all were found expended at the scene.

Certainly under these circumstances and considering this testimony, the trial court was on sound ground in denying the motion for a dismissal on the grounds of self-defense, and also denying the motion for a verdict of acquittal at the close of all the evidence. Very clearly the evidence presented questions for the jury. In a complete, accurate and well-stated charge, Judge Bogue left to the jury the determination of fact questions. His instructions included an excellent charge on self-defense. No exceptions on either side were taken to the court's instructions, and none could have been taken successfully.

An examination of this entire record convinces us that the defendant had a fair trial; that the verdict of the jury is fully supported in the evidence; and that no cause or complaint could be justified. Affirmed.