**Dallas Ray DELAY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 79–1070.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1979.

Decided July 18, 1979.

Rehearing Denied Aug. 6, 1979.

**174**

John A. Klobasa, of Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., for appellant.

David M. Rosen, Asst. U. S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U. S. Atty., and Evelyn M. Baker, Asst. U. S. Atty., St. Louis, Mo., on brief.

Before GIBSON, Chief Judge, HEANEY, Circuit Judge, and MacLAUGHLIN, District Judge.*

---

* The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota, sitting by designation.

GIBSON, Chief Judge.

This is an appeal from an order of the District Court[1] denying Dallas Ray Delay's motion to vacate, set aside, or correct a sentence of 100 years' imprisonment imposed in 1974 after Delay was convicted in the same District Court of bank robbery and three counts of killing in an attempt to avoid apprehension for bank robbery. The present motion was filed pursuant to 28 U.S.C. § 2255, and alleged that Delay's federal sentence and prosecution was in violation of Delay's privilege against double jeopardy and the policy of the Justice Department generally to refrain from prosecution of those convicted in state courts of crimes arising from the same set of operative facts. After carefully considering the briefs and the arguments of the parties, we affirm.

On January 17, 1973, Delay abducted Mr. and Mrs. Bob Reid Ketterman and their 17-year-old daughter. An explosive device was strapped to the back of Mr. Ketterman. He was then directed to go the the Bank of Grandin, Missouri, where he served as president, withdraw funds, and return to the site where Mrs. Ketterman and the daughter were being held hostage. Mr. Ketterman did as he was directed, and returned with $10,850 to the area where Delay held the two women. In return for his cooperation, Mr. Ketterman, his wife, and daughter were tied to trees and executed by· the appellant.

On January 19, 1973, Delay was arrested, and on May 8, 1973, he pled guilty to three counts of murder in the first degree in Missouri state court. He was eventually sentenced to three consecutive life sentences and is now serving that time. Following a jury trial, Delay was convicted in the United States District Court on January 23, 1974, of one count of bank robbery and three counts of killing in an attempt to avoid apprehension for the offense of bank robbery. On direct appeal this court carefully considered and rejected numerous alle-gations of error in the trial of Delay. *United States v. Delay*, 500 F.2d 1360 (8th Cir. 1974). Because of our holding that under the statute only one punishment could be imposed for violation of the various provisions of the bank robbery statute, we vacated the sentence for bank robbery and two of the sentences for killing in an attempt to avoid apprehension for bank robbery. However, we affirmed the 100-year sentence imposed on the third killing-in-an-attempt-to-avoid apprehension count.

■ In filing the present motion, Delay contended before the District Court that his federal sentence should be vacated because the prosecution was in violation of the fifth amendment prohibition against double jeopardy. He also argued that his prosecution violated the announced policy of the Department of Justice, requiring prior specific approval from the Attorney General in cases where a federal prosecution is based on the same acts as involved in a state conviction. In this appeal, Delay no longer contends that the fifth amendment prohibition on double jeopardy was violated by his federal prosecution and conviction. The report of the United States Magistrate, which was adopted by the District Court, had rejected this claim because it had been made and denied on direct appeal. *United States v. Delay*, 500 F.2d 1360, 1362 (8th Cir. 1974). It is well that Delay no longer pursues this argument, since few matters are more firmly established than that the fifth amendment does not prohibit prosecution by both federal and state officials for crimes against each sovereign involving the same acts. *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *Westfall v. United States*, 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036 (1927); *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922); *Moore v. Illinois*, 55 U.S. (14 How.) 13, 14 L.Ed. 306 (1852); *United States v. Marigold*, 50 U.S. (9 How.) 560, 13 L.Ed. 257

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

(1850); *Fox v. Ohio,* 46 U.S. (5 How.) 410, 12 L.Ed. 213 (1847); *Houston v. Moore,* 18 U.S. (5 Wheat.) 1, 5 L.Ed. 19 (1820).

Delay still does contend that he should receive relief from his federal sentence due to the alleged failure of the United States Attorney to obtain the approval of the Attorney General for Delay's prosecution after the state conviction. A failure to obtain prior approval would apparently contravene the announced policies of the United States Department of Justice. An understanding of those policies is necessary for the disposition of this appeal.[2]

■ The Justice Department policy involved in this case was first expressed by Attorney General William P. Rogers in a news release dated April 6, 1959.[3] In that news release, the Attorney General stated that the power of the federal government to prosecute a defendant who had previously been prosecuted in state court for the same act or acts should be sparingly used. Specifically, he expressed the view that such prosecutions should not occur "unless the reasons are compelling." He doubted "that it is wise or practical to attempt to formulate detailed rules to deal with the complex situation which might develop, particularly because a series of related acts are often involved." However, he expressed the view that prior to trial of a federal case following a state prosecution, a recommendation should be submitted by the United States Attorney to the appropriate Assistant Attorney General, and no such recommendation should be approved without its having first been brought to the attention of the Attorney General. Significantly, the language of the news release does not indicate an absolute rule of prior permission being required for such a prosecution. The policy expressed by Attorney

General Rogers has been adopted by subsequent attorneys general. However, it is not part of the Code of Federal Regulations and has not been statutorily adopted by Congress. Obviously, a department of the Executive Branch has no power to make laws or overrule decisional holdings of the courts. However, the Executive department or official can exercise discretion within proper bounds.

In 1960, in a case involving prosecutions in two different United States district courts for crimes arising from related conduct, the Supreme Court mentioned the press release of Attorney General Rogers. *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). That marked the first reference to the policy by the Supreme Court and hence led to its being referred to as the *"Petite* policy." In some subsequent cases, the Supreme Court vacated and remanded for dismissal convictions obtained in the federal district courts. *Watts v. United States,* 422 U.S. 1032, 95 S.Ct. 2648, 45 L.Ed.2d 688 (1975), *vacating* 505 F.2d 951 (5th Cir. 1974); *Ackerson v. United States,* 419 U.S. 1099, 95 S.Ct. 769, 42 L.Ed.2d 796 (1975), *vacating* 502 F.2d 300 (8th Cir. 1974); *Hayles v. United States,* 419 U.S. 892, 95 S.Ct. 168, 42 L.Ed.2d 136 (1974), *vacating* 492 F.2d 125 (5th Cir. 1974); *Thompson v. United States,* 400 U.S. 17, 91 S.Ct. 122, 27 L.Ed.2d 17, *vacating* 421 F.2d 373 (5th Cir. 1970). These cases may have involved the policy against dual prosecutions. The Supreme Court, upon request of the Government, disposed of these cases by *per curiam* order, thus they do not indicate any right of criminal defendants to obtain enforcement of the policy.

Recently the Supreme Court has considered the Justice Department policy against dual prosecutions more directly. In *Rinaldi v. United States,* 434 U.S. 22, 98

---

**2.** The United States has suggested that this is not a matter which may properly be raised in a motion under 28 U.S.C. § 2255, since it could have been raised on direct appeal. In *Houser v. United States,* 508 F.2d 509 (8th Cir. 1974), we considered in detail matters which are or are not cognizable under 28 U.S.C. § 2255. It would be fruitless for us to re-explore that body of law in this opinion. We are satisfied that it

is essential that we reach the merits of Delay's claim in order to dispose of this appeal.

**3.** Pertinent portions of that news release have been quoted by this court previously. *United States v. Mechanic,* 454 F.2d 849, 855 n. 5 (8th Cir. 1971), *cert. denied,* 406 U.S. 929, 92 S.Ct. 1765, 32 L.Ed.2d 131 (1972).

S.Ct. 81, 54 L.Ed.2d 207 (1977), the Court, by *per curiam* opinion, vacated the judgment of the court of appeals and remanded the case to the district court for the purpose of dismissing the indictment. Rinaldi had been convicted in the United States district court and also in the courts of the State of Florida for his participation in a plot to rob safety deposit boxes. When the federal prosecution reached the Fifth Circuit, the Government moved the court of appeals to remand the case to the district court to permit it to seek dismissal of the indictment due to the violation of the federal policy against multiple prosecutions. The court of appeals granted the motion to remand. However, the district court denied the motion to dismiss, in part because it concluded that the prosecutor had acted in bad faith in representing to the district court that he had been instructed to maintain the prosecution during the original trial. The Fifth Circuit affirmed the district court's denial of the motion but the Supreme Court reversed. It noted that the policy against multiple prosecutions "is useful to the efficient management of limited executive resources and encourages local responsibility in law enforcement. But it also serves the more important purpose of protecting the citizen from any unfairness that is associated with successive prosecutions based on the same conduct." 434 U.S. at 27, 98 S.Ct. at 84 (footnote omitted). The Court went on to hold: "The defendant, therefore, should receive the benefit of the policy whenever its application is urged by the Government." 434 U.S. at 31, 98 S.Ct. at 86. It is clear that under *Rinaldi* if the Government were now urging us on a direct appeal to permit it to dismiss the case after a remand to the District Court, we would be required to comply, at least in the absence of bad faith in making that request. However, there is nothing in *Rinaldi* to suggest that the defendant has any enforceable right to the benefits of the policy over the objections of the United States.

This court has on several occasions had reason to discuss the policy announced in Attorney General Rogers' press release. In *United States v. Mechanic*, 454 F.2d 849 (8th Cir. 1971), *cert. denied*, 406 U.S. 929, 92 S.Ct. 1765, 32 L.Ed.2d 131 (1972), we noted that the policy "is wise and ought to be followed." 454 F.2d at 856. However, we did not find support in the record to set aside the conviction on that ground. In *United States v. Wedelstedt*, 589 F.2d 339 (8th Cir. 1978), we affirmed the conviction and noted that the Justice Department policy does not give individual defendants any rights to seek dismissal on the basis of the *Petite* policy. In that case there had been an *ex post facto* approval of the prosecution by Justice Department personnel. Finally, in *United States v. King*, 590 F.2d 253 (8th Cir. 1978), Senior Judge Van Oosterhout stated for the court that enforcement of the *Petite* policy lies with the Attorney General and an individual defendant cannot avoid prosecution on the basis of it. However, we alternatively noted that the federal conviction had occurred prior to the disposition of the state criminal litigation. Thus, while we have repeatedly stated that criminal defendants are not entitled to enforcement of this policy against the objection of the Government, we have not until today been factually presented with the legal issue here involved.

■ Delay's request for relief was dismissed without an evidentiary hearing, and without a responsive pleading from the Government denying the allegation that the federal prosecution was pursued without the prior approval of the Justice Department. Thus, for the purpose of this opinion, we must take that allegation as true. The critical question before us is whether a Justice Department policy, announced through a press release from the Attorney General, grants a criminal defendant any rights greater than those guaranteed by the fifth amendment.

■ Delay cites *United States v. Heffner*, 420 F.2d 809 (4th Cir. 1970), and *United States v. Leahey*, 434 F.2d 7 (1st Cir. 1970). Those cases held that a criminal defendant was entitled to a remedy when Internal Revenue Service special agents, investigating the defendant's alleged tax fraud, had

failed to inform the defendant that they were investigating possible tax fraud. An Internal Revenue Service policy announced in a news release required that special agents make such a statement to the subjects of criminal tax fraud investigations. Those cases include one factor that distinguishes them clearly from the present situation. As noted by the court in *Leahey*, the guideline requiring the special agents to announce the purpose of their investigation affected the post-offense conduct of citizens involved in the criminal investigation. In other words, a citizen alerted that a criminal tax fraud investigation was underway might consult with an attorney or invoke other constitutional rights which he would not feel compelled to invoke if the investigation merely involved civil tax liability. The present situation, involving prior permission before federal prosecution and trial is held, does not involve an activity that could affect the actions of the criminal defendant. *Heffner* and *Leahey*, in their concern with investigative techniques, do not provide an appropriate analogy for overturning a criminal conviction because of non-observance of an internal rule of the Department of Justice.

■ On the other hand, the issue now before us has been squarely faced by the Seventh Circuit. In *United States v. Hutul*, 416 F.2d 607, 626 (7th Cir. 1969), the Court rejected a contention based on the 1959 press release of Attorney General Rogers, and noted that a press release not promulgated as a regulation and published in the Federal Register cannot serve to invalidate an indictment: "Rather, such a statement is merely a 'housekeeping provision' of the Justice Department and is so limited in its effect." Similarly, the Supreme Court has rejected a defense based on violation of a Justice Department circular letter requiring authorization from the Attorney General's office before evidence could be presented to the grand jury. *Sullivan v. United States*, 348 U.S. 170, 75 S.Ct. 182, 99 L.Ed. 210 (1954). Finally, this term the Supreme Court held that violation of regulations in the Internal Revenue Service manual, prohibiting certain consensual electronic surveillance unless specified prior authorization had been obtained, did not require exclusion of the evidence, nor did the agency's violation of its regulations amount to a denial of equal protection. *United States v. Carceres*, —— U.S. ——, ——, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). In view of these holdings by the Supreme Court as well as the holding of the Seventh Circuit and our prior statements on this issue, we hold that a criminal defendant has no rights under the internal policy of the Justice Department to limit dual federal-state prosecutions.

■ In the case here considered, the brutality of the senseless, cold-blooded killing of three innocent individuals in an attempt to avoid apprehension for the commission of another criminal act illustrates the absurdity of imposing disqualifying sanctions against prosecution on the basis of a violation of a housekeeping rule of an Executive department. No constitutional rights of the appellant were violated with the institution of the federal charges arising out of his activities, but contrariwise, the appellant displayed a singular lack of concern with the constitutional right to life previously enjoyed by his victims.

At oral argument, it was suggested that even if the policy announced in the 1959 press release did not confer rights on criminal defendants, the courts should in some manner enforce the provisions of that release out of concern for the efficient use of limited judicial resources. The concern apparently is with the occasional situation in which the Solicitor General has moved in the Supreme Court for the vacation of a judgment of a court of appeals and remand of the case for the purpose of dismissal. We have been cited to only a handful of instances in which such action may have been related to violation of the policy involved in this case. We are not convinced that even if enforcement of the policy out of concern for judicial resources were proper, it would in fact conserve those resources in this situation.

If we were to adopt such a rule, it would in effect mean that in every criminal case in which state charges are pending or might have been concluded for crimes arising out of related facts, the district court and eventually the court of appeals would have to determine whether the situation came within the intent of the Attorney General's policy, and whether as a factual matter that policy had been followed. This would result in further complication of litigation and probably result in some cases being delayed while answers were obtained from the Justice Department bureaucracy. If in some cases in the past judicial resources have been wasted by the Justice Department's actions, those instances have occurred at the Supreme Court level. We have not discovered any language in the opinions of the Supreme Court to indicate concern over the situation. In short, the Attorney General has announced a policy for the internal operation of the Justice Department. He is free to change that policy at any time and is free to enforce it as he sees fit. To further complicate criminal litigation by involving the courts in this activity would be unwise and would have an adverse effect on the administration of criminal justice.

Affirmed.

HEANEY, Circuit Judge, concurring.

I concur in the result reached by the majority, but I cannot agree with the dicta in the opinion that a criminal defendant never has a right to have a conviction set aside because of a violation of the *Petite* policy. In my view, when a defendant has properly raised this policy at the District Court level and raises it again on direct appeal, we should follow the lead of the Supreme Court in *Rinaldi v. United States*, 434 U.S. 22, 27, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977), and hold that the policy against multiple prosecutions serves the "important purpose of protecting the citizen from any unfairness that is associated with successive prosecution based on the same conduct."

I recognize that the Supreme Court in *Rinaldi* was considering the question on the application of the government. I believe, however, that the policy should be enforceable by a defendant in an appropriate case. This case is not an appropriate one. The defendant was aware of the policy and its violation before the direct appeal to this Court and failed to raise the issue. He should not be permitted to raise it now. We need decide nothing more on this appeal.

The majority states the obvious when it notes that the killings were brutal and implies that the three consecutive life sentences imposed on the defendant are somehow insufficient, and that the federal government is justified in imposing another ninety-nine years. However, the adequacy of the punishment is not the issue. The question is whether the United States District Attorney should be required to receive permission from the Department of Justice before instituting a successive prosecution. I believe that he should. The *Petite* policy is of long standing and is designed to achieve fairness, encourage the states to enforce the law and conserve judicial time. Its enforcement by a defendant is necessary to achieve the first and primary goal.

It is difficult for me to understand why any case should be delayed or complicated by the simple requirement of asking the Justice Department for permission to proceed in a case where the accused has already been charged and convicted in state court.