**412**

UNITED STATES of America, Plaintiff,

v.

Burton A. LIBRACH, Defendant.

No. 74–199 CR (2).

United States District Court,
E. D. Missouri, E. D.

Sept. 19, 1979.

Robert D. Kingsland, U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for plaintiff.

Ronald L. Rothman, Clayton, Mo., John J. Relles, co-counsel, St. Louis, Mo., for defendant.

MEMORANDUM

NANGLE, District Judge.

This matter is before the Court upon a limited remand by the United States Court of Appeals for the Eighth Circuit in order that this Court may review evidence, alleged to be newly discovered by defendant after his second trial, pursuant to the standards set forth in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Defendant Librach was charged and convicted of a violation of 18 U.S.C. § 1001, said charge arising out of payments received by defendant from the Department of Housing and Urban Development. Defendant's conviction was reversed and the cause remanded for a new trial because the government failed to advise defendant that a key witness, Robert Fowler, had been paid approximately $10,000.00 and had been placed in protective custody. *United States v. Librach,* 520 F.2d 550 (8th Cir. 1975). Retrial resulted in conviction; said conviction was affirmed on appeal. *United States v. Librach,* 536 F.2d 1228 (8th Cir. 1976), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). Defendant thereupon received certain evidence, following an action brought under the Freedom of Information Act, 5 U.S.C. § 552, and filed a motion for new trial based thereon. The evidence so received is:

1. An interview report prepared by an agent of the Federal Bureau of Investigation concerning an interview with Robert Fowler. This report contains a summary of Fowler's employment with the St. Louis Land Clearance for Redevelopment Authority and the responsibilities of the various positions that he held. Further, Fowler was shown copies of three bids for a certain move and advised the agent that he could

not recall the same. Fowler stated that he never solicited a kick-back payment and denied receiving any kick-back. He denied receiving a specific payment from a certain individual. Fowler, however, later testified to the contrary. As noted by the Court of Appeals herein,

> Fowler did not implicate the defendant when he was first interviewed under oath in May, 1974, but later he testified that he arranged the fraudulent payment with Librach's knowledge and connivance, receiving in return a kickback of $1,000. *United States v. Librach,* 520 F.2d 550, 552 (8th Cir. 1975).

2. Three documents revealing that the United States Attorney requested immunity for Timothy David Person, and that said request was approved. There is absolutely no evidence, however, that the immunity request or approval was ever communicated to Person, or that Person in fact was granted immunity.

3. An interview report prepared by an agent of the Federal Bureau of Investigation concerning an interview with Robert Fowler in which Fowler recited various threats that he had received. One threat involved an unknown black male who approached Fowler, then hospitalized, and who made references to a Richard Green in connection with the threat against Fowler. A second threat involved a telephone call received by Fowler, from an unknown male who Fowler thought to be a black male. The third threat again involved a telephone call from an unknown male, this caller believed by Fowler to be a white male. Defendant contends that this statement establishes that it was Richard Green, and not defendant, who had threatened Fowler's life. The Court notes preliminarily that the interview report does not support such an inference, since the individuals who made the threats by telephone are not identified and apparently made no references to Richard Green. Furthermore, the Court notes that it was defendant who repeatedly interjected the issue of threats against Fowler's life into the trial herein. In closing arguments, the Assistant United States Attorney stated:

Now, Burton Librach is not on trial today for threatening somebody's life. He's not on trial for threatening Mr. Fowler's life. I don't know who threatened his life. I don't know if Green threatened his life or the defendant threatened his life or somebody on behalf of the defendant, or who. That's not what is on trial here today, and that's not the issue and I didn't bring it up, Mr. Kohn did, about who is threatening who.

4. Copies of teletypes requesting that Robert Fowler be placed in the United States Marshal's witness protection program. Defendant was well aware that Fowler had received support payments from the government during the time of protective custody. See *United States v. Librach,* 536 F.2d 1228, 1230 (8th Cir. 1976). This area was the subject of extensive cross-examination at trial.

5. A statement made by Timothy David Person, and an interview report prepared by an agent of the Federal Bureau of Investigation concerning a statement made by Person. These documents state that Person submitted a bid for the move of the Windemere Hotel and was advised by Fowler that the bid was accepted. On the day preceding the move, Person contacted defendant concerning the time for the move and was advised by defendant that other arrangements had been made. Accordingly, Person did not make the move and was not paid for making the move. Upon being shown an invoice for the move of the hotel, signed by Person as paid in full, Person stated that the signature was his but that he did not know where it came from. Person further advised the Federal Bureau of Investigation of the general nature of his involvements with the St. Louis Land Clearance for Redevelopment Authority and the fact that he had made personal loans to Robert Fowler on various occasions. Person also stated that he understood that defendant held the mortgage on Fowler's home and that Fowler had not been steadily employed in a number of years. At trial, Person testified that he had prepared a bid

on the move at Fowler's request. He further testified that he had obtained for submission the bids of other movers for the same move, all bids by pre-arrangement higher than the bid submitted by Person. He further testified that he had never seen the invoice marked "Paid in Full" although his signature was on the same. He further testified concerning prior meetings and arrangements with Fowler.

Defendant contends that he had no knowledge of the agreement between the government and Person concerning possible charges against Person. Defendant was aware, however, that a four-count indictment against Person had been dismissed and that Person had instead entered a plea of guilty to a misdemeanor. Counsel for defendant did not pursue this area in cross-examination in any attempt to impeach Person's credibility. Moreover, Person's testimony was essentially cumulative. Compare *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In view of the nature of the evidence against defendant, defendant's knowledge of the dismissal of the indictment against Person and minimal impact of Person's testimony against defendant, the Court must conclude that the outcome of the trial would not have been affected, nor a reasonable doubt created that did not otherwise exist.

As noted by the Court of Appeals in the partial remand herein, *United States v. Librach,* 602 F.2d 165 at page 167 (8th Cir. 1979),

1) Where "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury[,]" the conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs, supra,* 427 U.S. at 103, 96 S.Ct. 2392.

2) Where defense counsel makes a pretrial request for specific evidence, *e. g.,* the extrajudicial statements made by an accomplice, the conviction cannot stand if "the suppressed evidence might have affected the outcome of the trial." *Id.* at 104, 96 S.Ct. at 2398.

3) Where defense counsel makes a general request for all exculpatory material, or makes no request at all, reversible error has been committed "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.* at 112, 96 S.Ct. at 2402.

It is the Court's conclusion that defendant's motion for new trial must be denied.

The interview reports concerning statements made by Fowler, in which he denied soliciting or receiving kick-backs, arguably constitutes exculpatory evidence, as well as the statement of an accomplice. The Court is totally unable to conclude that this evidence might have affected the trial's outcome or might have created a reasonable doubt that might otherwise exist. Fowler was subjected to extensive cross-examination by counsel for defendant. That he had originally denied any involvement in criminal activity could not possibly have the impact upon the trial that defendant infers. The fact that Fowler, upon admitting involvement, originally did not implicate defendant was known to defendant and was a basis of cross-examination.

The documents involving requests for and approval of a grant of immunity of Person are irrelevant herein where there is no evidence that Person was ever granted immunity or knew that a request for the same had even been sought. It is this Court's conclusion that a witness' lack of knowledge that he could be granted immunity should he refuse to testify could not possibly affect the outcome of the trial, or create a reasonable doubt that did not otherwise exist.

The report relating to threats against Fowler offers no support to defendant herein. It was defendant, and not the government, who chose to focus on the threats and the nature thereof. Contrary to defendant's assertion, the document does not prove that defendant was not involved in the threats; the report is certainly not exculpatory. Moreover, the arguments of counsel, as well as the testimony at trial,

preclude the conclusion that the evidence might have affected the outcome of the trial or created a reasonable doubt that did not otherwise exist.

The Court totally fails to perceive the relevance of the two teletypes sent regarding Fowler's placement in the United States Marshal's witness protection program. The Court understands that counsel for the parties herein have been engaged in a longstanding battle concerning the question of whether one or two teletypes were actually sent by the United States Attorney's office. Even assuming *arguendo* that defendant is correct in asserting that two teletypes were sent, the same is totally irrelevant to the jury's determination herein. Said evidence would not even be brought to the jury's attention. Thus, the Court must conclude that said documents do not fall within the categories of *Agur, supra. Cf., Delay v. United States,* 602 F.2d 173 (8th Cir. 1979).

The documents relating to Person's statement and interview similarly fail to persuade this Court that a new trial is required. Said statements do not reveal any information from which this Court could conclude that there is a reasonable likelihood that the judgment of the jury could have been affected, that the outcome of the trial might have been affected or that a reasonable doubt could have been created that did not otherwise exist.

Defendant contends that the government permitted Fowler to give false testimony in that Fowler testified that he had not been given immunity but had been told that he would not be prosecuted because of his ill health. Fowler further testified that he had been told that he would not be prosecuted "in return for . . . [his] testimony in this trial" "and for telling the truth". Defendant cites in support an internal document of the Federal Bureau of Investigation in which it states that it was anticipated that prosecution of Fowler would be declined because of Fowler's cooperation. Defendant also cites a request for, and approval of, immunity authorization for Fowler. The testimony at trial reveals that the Assistant United States Attorney elicit-

ed from Fowler that the decision not to prosecute was based, at least in part, upon Fowler's cooperation in testifying at trial. The record fails to reveal that immunity was ever granted, although approval to grant the same had been given. Fowler emphatically denied that he had, in fact, been given immunity and the area was the subject of much cross-examination. The record simply fails to support defendant's contention and the Court concludes, upon a review of the record herein, that these documents do not support any reasonable likelihood that the testimony, assuming *arguendo* that the same is false, could have affected the jury's judgment. The Court further concludes that said evidence, had it been known at the time of trial, would not have created a reasonable doubt that did not otherwise exist, nor would the same have affected the outcome of the trial.

Defendant also contends that the government permitted Fowler to give false testimony. Specifically, defendant states that Fowler testified that he had been told that he would not be prosecuted because of his ill health. Defendant argues that the true reason that Fowler was not prosecuted was his cooperation with federal authorities. Defendant refers to a document of the Federal Bureau of Investigation in which it states:

For the information of the Bureau, AUSA BARRY SHORT advised in view of cooperation with the Government by PERSON and FOWLER, he does not anticipate prosecution of those 2 subjects, however, he has not yet formally declined prosecution of these subjects and they are still carried in the title.

Defendant further refers to a request for immunity authorization, later approved, concerning Fowler. The record does not reflect that Fowler was ever granted immunity pursuant to said authorization.

Defendant also contends that the government concealed a deal made with Timothy Person. As early as October, 1975, defendant knew that Person had been charged in a four-count indictment with violations of 18 U.S.C. § 1001. Defendant further knew

that the indictment had been dismissed and that Person entered a plea of guilty to an information charging Person with a misdemeanor in violation of 18 U.S.C. § 1012. Defendant has filed the affidavit of Person's attorney which states in part:

> In connection with the disposition of Mr. Person's case, the United States Attorney's Office stated to me that my client would not be subject to any further prosecution for his involvement in transactions with the St. Louis Land Clearance for Redevelopment Authority in exchange for his cooperation and information in the investigation and prosecution by the government of fraudulent claims in the St. Louis Land Clearance for Redevelopment Authority.

At trial, the government asked Person if he had ever been convicted of a misdemeanor or felony. Person testified that "[i]t was a misdemeanor in relationship to this Land Clearance, the handling of documents." Counsel for defendant did not inquire further.

This Court has presided over two trials herein. Following his second conviction, defendant did not even challenge the sufficiency of the evidence presented. The documents submitted by defendant in support of his motion for new trial do not give rise to even the slightest doubt in this Court's mind that the same would have affected the judgment of the jury, the outcome of the trial or create a reasonable doubt that did not otherwise exist. As noted by the Supreme Court in *Giglio v. United States, supra,* 405 U.S. at 154, 92 S.Ct. at 766,

> We do not . . . automatically require a new trial whenever "a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . ." *United States v. Keogh,* 391 F.2d 138, 148 (CA2 1968).

Accordingly, this Court reaffirms its prior ruling, denying defendant's motion for new trial. In accordance with the mandate of the Court of Appeals, this ruling shall be certified to the appellate court.