**UNITED STATES of America,**

**v.**

**El–Sayyid NOSAIR, a/k/a "Abu Abdallah," a/k/a "El Sayyid Abdul Azziz," a/k/a "Victor Noel Jafry," et al., Defendants.**

**No. S3 93 Cr. 181 (MBM).**

United States District Court, S.D. New York.

June 7, 1994.

See also 854 F.Supp. 254.

Robert S. Khuzami, Andrew C. McCarthy, Alexandra Rebay, Asst. U.S. Attys., New York City,

Roger Stavis, New York City, for defendant Nosair.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant El–Sayyid Nosair moves to dismiss Counts Five, Six, Eight, Nine and Ten of the captioned indictment, claiming that they charge crimes for which he was previously tried in state court in a prosecution he now says was "a sham and a cover for a federal prosecution," *Bartkus v. Illinois*, 359 U.S. 121, 124, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959), and therefore those counts are barred by the double jeopardy clause of the Fifth Amendment.[1] Alternatively, he seeks a hearing to explore the issue of federal involvement in his state prosecution. For the reasons set forth below, the motion to dismiss is denied and no hearing is necessary.

Nosair points out, and the government does not dispute, that he was tried in the Supreme Court of New York in 1991 for the November 5, 1990 murder of Meir Kahane, the attempted murder of a postal officer during his alleged attempt to escape after the Kahane slaying, and related weapons charges, among others. He was acquitted of the murder and attempted murder charges, and convicted of two counts of assault (one of them relating to the attack on the postal officer, the other to an attack on another person), one count of criminal possession of a weapon, and one count of coercion. Counts Five, Six, Eight, Nine and Ten charge the Kahane murder, the assault on the postal officer, and related weapons charges, all of which overlap the state prosecution.

---

1. That clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V, cl. 2.

■ The government points out, and Nosair does not dispute, that the "dual sovereignty" principle permits successive prosecutions by state and federal authorities for identical conduct, in what Chief Judge Newman, writing for the Second Circuit, has called "an acceptable cost of federalism, tolerable under principles of both double jeopardy and due process." *United States v. Aboumoussallem,* 726 F.2d 906, 909 (2d Cir. 1984). However, Nosair points out that that principle, formulated in *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922) and recognized in *Bartkus, supra,* and in *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), provides an exception for the case where one sovereign is acting as the "tool" of another such that one prosecution is merely a "sham and a cover" for the other. *Bartkus,* 359 U.S. at 123–24, 79 S.Ct. at 678–79. He claims that this prosecution fits within that exception, or at least that a hearing should be held to determine whether it does.

The evidence Nosair adduces for his argument that the 1991 state prosecution rendered the state a "tool" of the federal government and was a "sham and a cover" for the current prosecution is derived from five documents appended to his motion papers, six others whose contents have not been disclosed to him but which he apparently believes may contain evidence of federal involvement in his state prosecution, and the fact that the government's informant in this case, Emad Salem, began to provide information to federal authorities shortly after Nosair's arrest in 1990. (Stavis Aff. ¶ 9 and Ex. A–E) Two of the appended documents show that the FBI received and transferred to the New York City Police Department certain items of evidence, including evidence seized from Nosair's residence. (*Id.* Ex. A, B) Two others show that the FBI conducted fingerprint and handwriting tests which it shared with state authorities. (*Id.* Ex. C, D) The last document shows simply that the case number on the other documents is the same as the case number on an investigation of Nosair relating to this case. The six additional documents Nosair identifies from an index of documents provided by the government are two FBI logs, two FBI reports,

an item identified as "FBI CORRESPONDENCE," and the business cards of an Assistant U.S. Attorney and an FBI agent. All but the business cards have been withheld as material to be produced at trial pursuant to 18 U.S.C. § 3500, which creates no pretrial discovery right, *United States v. Percevault,* 490 F.2d 126, 132 (2d Cir.1974); the cards have been withheld as not discoverable. (Nosair Mem. 4 n. 1)

From these documents, Nosair concludes that the "the FBI was clearly involved in the investigation and prosecution of the original Meir Kahane murder case[,]" and "furnished considerable technical assistance to the state prosecutors preparing the case against Mr. Nosair, including fingerprint and handwriting analysis." (Nosair Mem. 4)

At most, the documents appended to Nosair's motion papers, and those he cites, reflect that the federal government provided cooperation to state authorities in a state case tried in state court. Nosair does not explicitly acknowledge, although he does not seem to dispute, that *Bartkus* itself involved federal-state cooperation, which the Supreme Court recognized as "the conventional practice between the two sets of prosecutors throughout the country." 359 U.S. at 123, 79 S.Ct. at 678. Courts regard such cooperation as desirable, and it does not trigger double jeopardy concerns. *See Aboumoussallem,* 726 F.2d at 910 n. 3; *United States v. Mejias,* 552 F.2d 435, 441 (2d Cir.), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977). That the federal government started obtaining information from Salem while Nosair was being prosecuted in state court does not suggest that the federal government controlled the state prosecution, or otherwise change the result.

■ Although Nosair acknowledges that he is unaware of "the precise degree of federal assistance in the state prosecution" (Nosair Mem. 5), he urges that at the least the court should conduct a hearing to explore the problem, citing *United States v. Ng,* 699 F.2d 63 (2d Cir.1983). He argues that *Ng* stands for the proposition that an unsupported claim of federal control over a state prosecution warrants a hearing. That is a more extrava-

gant reading of certain language in *Ng* than that case justifies.

*Ng* involved a government appeal after a district court dismissed an indictment for vindictive prosecution. The Second Circuit reversed, and treated as well the defendants' alternative arguments for dismissal, including purposeful and unnecessary pre-indictment delay, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and found that claim without substance but did not foreclose defendants "upon remand from adducing evidence of relevant circumstances claimed to demonstrate that the essential *Barker v. Wingo* prerequisites exist. Although there is no evidence in the record supporting the defendants' claim ... the matter is remanded to the district court to permit the defendants to offer proof." *Ng,* 699 F.2d at 70. The Court then continued the same thought with the language Nosair cites:

> Similarly, defendants' unsupported claim that the state acted as a 'tool' of the federal prosecutor, rendering the present indictment a violation of the Double Jeopardy Clause of the Fifth Amendment [citing *Bartkus, supra*] is remanded for such evidentiary hearing as is required even though it is clearly meritless on the record as it now stands.

*Id.* Plainly, Nosair has put more weight on that language than it will bear. The Court, having reversed dismissal of an indictment, simply remanded to permit defendants to adduce evidence in support of two propositions as to which they had offered no evidence and which were not the basis for the district court's holding. Moreover, the Court simply remanded for "such evidentiary hearing as is required"; it did not hold that any hearing in fact was required, but rather left that matter to await the possibility, which the Court seemed to consider remote, that defendants would offer evidence in support of their alternative claims.

*Ng* does not stand for the proposition that every apparently baseless claim warrants a hearing. There is law on that subject, some of it written by the author of *Ng,* Judge Mansfield, and it is decidedly the other way. In *United States v. Berrios,* 501 F.2d 1207 (2d Cir.1974), the Court reversed dismissal of an indictment following the government's refusal to turn over a memorandum in connection with a claim of selective prosecution. The Court, through Judge Mansfield, wrote as follows:

> Upon the meagre preliminary showing made here, we doubt whether we would have granted a hearing or ordered the production of evidence for such a hearing, since Berrios appears frankly to have embarked upon a fishing expedition. The effect could be to encourage use of the defense of selective prosecution, however baseless, as a means of obtaining discovery to which the defense would not otherwise be entitled.

501 F.2d at 1211. The same might be said of double jeopardy. The purpose of a hearing is to hear disputed issues of fact, not to determine whether disputed issues of fact might be found and then heard. *See United States v. Migely,* 596 F.2d 511, 513 (1st Cir. 1979) (Campbell, J.) (no hearing on suppression motion absent sufficient factual showing by defendant); *United States v. Gregory,* 611 F.Supp. 1033, 1044 (S.D.N.Y.1985) (Weinfeld, J.) (same).

Finally, it is useful to look at the larger picture. Nosair was tried in state court in 1991 on the particular charges set forth above. (*See* p. 1, *supra*) He was indicted in 1993 on the broader charges in this indictment, including seditious conspiracy as charged in Count One, after numerous intervening events, including but not limited to the bombing of the World Trade Center. This scenario suggests no reason whatever for the federal government to have used the state prosecution as a cat's paw and to wait two years before filing as part of a larger indictment the charges Nosair now moves to dismiss.

As the government has pointed out, although *Bartkus* and later cases recognize that there is an exception to the dual sovereignty doctrine for prosecutions in which one sovereignty has manipulated and controlled the prosecution brought by another, there is no reported case in which that exceptional circumstance has been found to exist. (Gov't.Mem. 95) Nothing in the facts pre-

sented here suggests that this should be the first. Nosair's motion to dismiss Counts Five, Six, Eight, Nine and Ten as barred by the double jeopardy clause is denied.

SO ORDERED.