**UNITED STATES of America**

v.

**Mohammed ABOUHALIMA, Defendant.**

**No. S7 93 CR. 181(MBM).**

United States District Court,
S.D. New York.

April 17, 1997.

Mary Jo White, United States Attorney For The Southern District Of New York,

Patrick J. Fitzgerald, Assistant United States Attorney, New York City, for U.S.

David L. Lewis, Lewis & Fiore, New York City, for Defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Defendant Mohammed Abouhalima is the brother of Mahmoud Abouhalima, convicted after trial before Judge Duffy of participating in the February 1993 bombing of the World Trade Center. Mohammed Abouhalima is indicted in this case as an accessory after the fact to the World Trade Center bombing in that he drove his brother Mahmoud to the airport allegedly with the intent of helping the latter to escape. Mohammed Abouhalima moves to dismiss the current indictment on the ground that its continued prosecution is barred by the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, principles of double jeopardy, and by the Sixth Amendment's guarantee of a speedy trial. For the reasons outlined below, the motion is denied.

### I.

Mohammed Abouhalima was one of several defendants charged with seditious conspiracy in a previous indictment ultimately tried before me in 1995. He first appeared before the court on August 26, 1993. Both sides agree that all time between then and the date of the stipulation of severance, October 18, 1994, was properly excluded from the Speedy Trial Act computation. In addition, the stipulation between the parties included the following language:

> The government and the defendant Mohammed Abouhalima further agree that a period of thirty (30) days is appropriate for those parties to continue to explore the possibility of disposing of this matter without a trial. With that understanding, the government will not seek Mohammed Abouhalima's indictment when it asks the grand jury to return a superseding indictment on October 19, 1994. The parties agree that the thirty-day period for plea discussions serves the ends of justice and outweighs the interests of the public and the defendant in a speedy trial, such that

an exclusion of time by the Court, pursuant to 18 U.S.C. Section 3161(h)(8)(A) is warranted.

As set forth in the stipulation, the government did not seek to reindict Abouhalima in the next superseding indictment it caused to be filed, and Abouhalima does not seek to count against the government the 30 days excluded by the stipulation. (Abouhalima Mem. at 5)

In early 1994, however, this defendant had filed a pretrial motion on his own behalf and on behalf of his codefendants seeking to dismiss the indictment on the ground of outrageous government misconduct, such misconduct consisting principally of overreaching in the nature of entrapment by the government's informant, Emad Salem. During a pretrial hearing on March 31, 1994, I disclosed my intention to postpone any hearing in connection with that motion until after trial (3/31/94 Tr. 13), and that is what I did. The rationale for that approach was not that the motion should simply be put off, but rather that because a good deal of the misconduct defendants alleged would be explored in the course of Salem's testimony at trial, whether in support of entrapment defenses or otherwise, the trial itself would serve at least in part as the evidentiary portion of the hearing. This would avoid having Salem testify twice about the same matters. The trial started in January 1995 and lasted until October 1, 1995. As anticipated, a great deal of the evidence said to support this motion was developed at trial, although the grounds for the motion were later expanded by other defendants to include alleged destruction of evidence by Salem and the government, and some additional evidence was taken after the trial at a hearing conducted on December 20, 1995. In an opinion read in open court on January 10, 1996, I denied the motion. The current indictment, § 7 93 Cr. 181, was filed under seal on July 16, 1996, and Abouhalima was arrested on September 18, 1996.

## II.

■ In bare bones, Abouhalima's argument is as follows: (i) the Speedy Trial Act clock began to run, at the latest, on November 18, 1994, the 30–day grace period stipulated by the parties following Abouhalima's severance from the earlier indictment having expired the day before; (ii) even excluding the period of the trial itself, and 10 days thereafter for consideration of Abouhalima's motion, some 285 days of unexcludable time elapsed until the unsealing of the current indictment, and 261 additional days would be included if the trial period itself were counted; (iii) these elapsed periods vastly and inexcusably exceed the Speedy Trial Act limit of 70 days, and accordingly the earlier indictment from which Abouhalima was severed must be dismissed with prejudice; (iv) the current charge is one required by principles of double jeopardy to have been joined with the charge in the earlier indictment; and (v) therefore, the current charge likewise must be dismissed.

There are two weak links in that chain of reasoning. First, the earlier indictment is not subject to dismissal with prejudice as to Abouhalima because a substantial part of the trial itself constituted the hearing on Abouhalima's motion to dismiss based on alleged government misconduct. Second, even if the earlier indictment were to be dismissed with prejudice as to Abouhalima, the current charge is not one required by double jeopardy principles to have been joined in the earlier indictment, and accordingly the current charge need not be dismissed.

■ As noted above, the reason for postponing a hearing, if it was necessary, on Abouhalima's motion to dismiss the earlier indictment for outrageous government misconduct was not simply a matter of the court's convenience. Rather, the court, and probably everyone else involved, anticipated—correctly—that many of the facts underlying the motion would be explored at trial, whether in connection with conventional entrapment defenses or in the course of developing credibility issues relating to Salem and government agents. In addition, certain limited factual issues were developed further after trial. It would have been enormously wasteful to have held a hearing before trial on Abouhalima's motion not only because such a hearing would have duplicated much of the testimony given at trial, but also be-

cause any ruling in the government's favor before trial necessarily would have been tentative and provisional, subject to what further facts might be developed at or after trial. Therefore, this case is unlike *United States v. Gambino*, 59 F.3d 353 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1671, 134 L.Ed.2d 776 (1996), where, although a trial court's failure to dismiss an indictment was held ultimately to be harmless error, *id.* at 362–63, the Court found that the postponement of a *Kastigar* hearing until after trial meant that the motion "no longer consume[d] the court's time and attention" and that the motion had "in effect been tabled," *id.* at 359. Therefore, the Court held, the time until after trial was not excludable from the Speedy Trial Act's 70–day limitation. *Id.* Here, facts were being developed during the trial itself that were relevant to the motion, and in any event, no definitive ruling in the government's favor would have been possible until after the trial, regardless of whether a hearing was held before trial. In these circumstances, although Abouhalima's motion was not a constant preoccupation throughout the trial, neither was it "in effect tabled."

The government concedes that even excluding the time until January 10, 1996, when I denied Abouhalima's motion in open court, the Speedy Trial Act clock ran on April 19, 1996, and 174 days ran on the Speedy Trial Act clock total until the September 18, 1996 arrest, 104 more than the 70 permitted by the statute. (Gov't. Mem. at 5)[1] To determine whether an indictment should be dismissed with or without prejudice, the statute directs that the court consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). Abouhalima argues—"assumes" would be more accurate—that it is

the offense in the current indictment that is relevant to the seriousness analysis, apparently because that is the charge he is now moving to dismiss. The government does not assert otherwise, but it seems at least arguable that Abouhalima's Speedy Trial Act argument depends on whether the initial indictment, in which he was charged with seditious conspiracy, must be dismissed with prejudice, because if not, then any Speedy Trial Act issue relating to the current charge would not be reached. In any event, seditious conspiracy is among the most serious charges known to the law. Acting as an accessory after the fact is, by comparison, a bagatelle, and Abouhalima so treats it in his brief (Abouhalima Mem. at 34–35); but only by comparison, because the fact after which Mohammed Abouhalima is alleged to have acted as an accessory is the bombing of the World Trade Center that resulted in six deaths, hundreds of injuries, and tens of millions of dollars in damage; he faces a sentence of 15 years if convicted. 18 U.S.C. § 3 (1994). The charges in both indictments are serious.

The circumstances of the case that led to dismissal include a stipulated severance following denial of Abouhalima's motion for a severance. A reprosecution of Abouhalima in such circumstances would not have compromised the goals of the Speedy Trial Act because the amount of time elapsed beyond the deadline—104 days—was not substantial, see *United States v. Kiszewski*, 877 F.2d 210, 214 (2d Cir.1989) (130 days "not minor" but insufficient to justify dismissal with prejudice), and Abouhalima has made no showing of suspect government conduct[2], a pattern of delay in this district, or prejudice to his case. For those reasons, any dismissal of the earlier indictment would have been without prejudice. The analysis under this District's Plan for Prompt Disposition of Criminal Cases

---

1. The government's calculation of the number of days that passed between the resolution of the motion and defendant's arrest appears to be correct, although even if it is off by a few days, that difference is irrelevant to the resolution of this motion.

2. Abouhalima has requested a hearing to explore whether the government had an improper motive

for delay. Abouhalima Mem. at 43–44. Hearings are held to resolve disputed issues of fact, not to determine whether such issues might be found and then resolved. *United States v. Nosair*, 854 F.Supp. 251, 253 (S.D.N.Y.1994). Abouhalima has adduced nothing to suggest the existence of an improper government motive, and thus there is nothing to hear.

(the "Plan") is the same. The Plan does not require the dismissal of any case "in circumstances in which such action would not be required by 18 U.S.C. §§ 3162 and 3164." Plan ¶ 10(a).

Even if the previous indictment were required to be dismissed with prejudice, Abouhalima concedes that the Speedy Trial Act clock begins to run anew with the filing of a new indictment that contains a different charge. He argues, however, that the charge in the current indictment—acting as an accessory after the fact to the World Trade Center bombing principally by driving one of the perpetrators, defendant's brother, to the airport to help him escape—is included within the seditious conspiracy charge contained in the earlier indictment, and therefore should have been joined with it for double jeopardy purposes. Therefore, he argues, the new indictment too is subject to dismissal.

To support his claim that the charge in the current indictment—acting as an accessory after the fact to the World Trade Center bombing—should have been included for double jeopardy purposes in the earlier indictment—which charged Abouhalima with participating in a seditious conspiracy that included the World Trade Center bombing as one of its objects—Abouhalima relies principally on *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) and *United States v. Seda*, 978 F.2d 779 (2d Cir.1992). Neither case dealt with either offense at issue here, and neither supports the result Abouhalima seeks here.

In *Whalen*, the Court held that cumulative punishments could not be imposed for rape and felony murder when the felony underlying the murder conviction was the rape because "[a] conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape." 445 U.S. at 693–94, 100 S.Ct. at 1439. The Court noted that felony murder in the large certainly does not always require proof of rape, and thus cumulative punishments would not literally fail the familiar *Blockburger* test, which provides that double jeopardy is not present if one statute requires the proof of an element that the other does not. *Block-*

*burger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). However, the Court held that in the case before it the felony murder charge did require proof of every element of the rape, and therefore double jeopardy principles were offended by successive punishments.

In *Seda*, the Court of Appeals upheld the trial court's direction that the government choose between counts of an indictment found to be multiplicitous because it charged both bank fraud and submission of false statements in loan applications to a bank. The Court held that, "[t]he false loan applications are simply a species of bank fraud, just as the killing of the rape victim in *Whalen* was a species of felony murder." 978 F.2d at 782.

In the case at bar, acting as an accessory after the fact, even to a seditious crime, is not necessarily a species of seditious conduct, nor does seditious conduct, even on the facts charged here, necessarily involve acting as an accessory after the fact. In order to prove that Mohammed Abouhalima acted as an accessory after the fact to the World Trade Center bombing, the government need prove only that he drove Mahmoud Abouhalima, his brother, to the airport, and provided whatever other after-the-fact help the government may be able to prove, in order to help Mahmoud escape prosecution for that crime. The government need not prove that Mohammed Abouhalima agreed to further additional seditious conduct, as would be required to convict on the seditious conspiracy charge, notwithstanding that escape would render Mahmoud available for more such conduct should he choose to engage in it. That the government might prove both crimes in part with proof of the same act is irrelevant because the act itself—driving Mahmoud to the airport—is not a crime standing alone. Rather, the presence or absence of a crime, and what crime is present, turns completely on the intent with which the act is done. Indeed, if the government could prove that Mohammed Abouhalima drove Mahmoud to the airport not for the purpose of escape but rather for the purpose of carrying out a suicide bombing, that could prove the crime of seditious conspiracy without also

proving the crime of acting as an accessory after the fact, Mahmoud's escape from prosecution being both moot in view of Mahmoud's hypothesized goal and irrelevant to Mohammed's hypothesized goal.[3]

Because the crime charged in the current indictment need not have been charged in the earlier indictment for double jeopardy purposes, even if the earlier indictment were to be dismissed with prejudice, such dismissal would not compel dismissal of the current indictment.

### III.

■ Defendant asserts also that the government violated his right to a speedy trial under the Sixth Amendment. "Under *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the four factors to be considered in determining whether there has been a deprivation of defendant's constitutional right to a speedy trial are: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) the prejudice to the defendant." *United States v. Vasquez,* 918 F.2d 329, 337–38 (2d Cir.1990). Here, as discussed above, the moderate delay and the legitimate reason for the much of the delay, albeit not all of it, weigh against a violation. Moreover, the third and fourth factors do not weigh in favor of a violation: defendant waited many months before raising Sixth Amendment objections and he was enlarged, albeit on bail, throughout. Therefore, defendant's Sixth Amendment claim must be rejected.

\*     \*     \*     \*     \*     \*

Accordingly, defendant's motion to dismiss the indictment is denied.

SO ORDERED.

---

**3.** Moreover, the continued validity of *Seda* has been called into question. *See United States v. Wolfswinkel,* 44 F.3d 782, 785 (9th Cir.1995) (citing *United States v. Dixon,* 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (plurality opinion)).